Larry W. REYNOLDS,
Plaintiff–Appellant,

v.

Otis R. BOWEN, M.D., Secretary of Health and Human Services,
Defendant–Appellee.

No. 87–1325.

United States Court of Appeals,
Seventh Circuit.

Argued Sept. 24, 1987.

Decided April 13, 1988.

---

Ray Moss, Ray Moss and Associates, P.C., Clinton, Ill., for plaintiff-appellant.

Barbara M. King, Asst. Reg. Counsel, Dept. of Health & Human Services, Chicago, Ill., for defendant-appellee.

Before BAUER, Chief Judge, KANNE, Circuit Judge, and ESCHBACH, Senior Circuit Judge.

KANNE, Circuit Judge.

The appellant, Larry Reynolds, filed an application for social security disability benefits. That application was initially denied and denied again after a request for reconsideration. The appellant then requested a hearing before an administrative law judge (ALJ). The ALJ also denied Mr. Reynolds' benefit application. Mr. Reynolds appealed the ALJ's decision to the district court where the case was heard by United States Magistrate Charles H. Evans.

The Secretary of Health and Human Services and Mr. Reynolds both filed motions for summary judgment. Magistrate Evans granted the Secretary's motion and denied Mr. Reynolds' motion. Mr. Reynolds appeals. We affirm the judgment of the district court.

I.

Larry Reynolds was 45 years old at the time of his hearing, had a high school Graduate Equivalency Degree and had taken some college courses. He has worked as a carpenter, a heavy equipment operator, a telephone lineman, and most recently, as a welder at a nuclear power plant. In May, 1980, he suffered a work-related back injury and did not return to work until January, 1981. In November of 1981 he was discharged from his employment duties and has not returned to work since that time.

The medical evidence revealed that Mr. Reynolds initially suffered lumbar strain and that he was to avoid heavy lifting. Subsequent physical examination revealed normal myelogram results, normal lumbosacral spine x-ray results, normal electromyography and nerve conduction tests with no radiculopathy or neuropathy, no reflex or sensory loss, no effusion of any joint, no motion limitation in any joint, and no anatomical abnormalities. Examinations also revealed early degenerative arthritic changes and a pinching caused by either a disc protrusion, or stenosis (a narrowing) of the nerve root egress canal, or scarring of the nerve root. All of the examining physicians concurred in the recommendation that Mr. Reynolds should not return to his prior type of work and that he should look for a job with less demanding physical requirements. Physical therapy resulted in a reduction of Mr. Reynolds' discomfort.

Mr. Reynolds filed a claim for disability benefits on July 12, 1984. That application was denied initially and again upon reconsideration. Subsequently he requested a *de novo* hearing before an ALJ. After that hearing, the ALJ denied his claim. Mr. Reynolds exhausted his administrative remedies and then appealed to the district court. The district court granted the Secretary's motion for summary judgment and denied Mr. Reynolds' motion for summary judgment. It is that order that is the subject of this appeal.

Prior to filing the current benefits application, Mr. Reynolds had filed two other applications.[1] These benefits decisions

---

1. His first application alleged that he was dis-     abled as of January 22, 1982 due to his back

were never appealed (thus they became final and binding).

Mr. Reynolds testified before the ALJ with regard to his activities. Despite his painful condition, which he characterizes as a constant 3 or 4 on a 10 point scale, he works at home in his garden and he helps with household chores which include occasionally operating a push lawnmower. He watches 5 to 6 hours of television per day and drives a car 15 to 20 miles per week. Additionally, he belongs to a scuba diving club and participates in underwater search and recovery operations for local law enforcement agencies. He also testified that on the day prior to his hearing before the ALJ he went with friends on an expedition to pick bittersweet.

The ALJ found that the claimant had a severe impairment but that the impairment did not meet or equal the listings set forth in 20 C.F.R. Part 404, Subpart P, Appendix 1.[2] The ALJ also found that Mr. Reynolds retained the residual functional capacity to perform the entire range of sedentary work as set forth in 20 C.F.R. 404.1567(a). The ALJ then applied Rules 201.21 and 201.28 as set forth in Table 1, Subpart P, Appendix 2. Rule 201.21 directs a finding of "not disabled" where the claimant (1) is found to have a maximum sustained work capability limited to sedentary work as a result of a a severe medical impairment; (2) is between 45 and 49 years old; (3) has a high school education or higher; and (4) has prior work experience which was either skilled or semiskilled in nature with non transferable skills. Rule 201.28 is identical to Rule 201.21 except it is for individuals aged 18 to 44.

injury. The application was denied at the state agency level and Reynolds never pursued an appeal. The second application alleged a disability starting November 28, 1981. That application was denied, but an ALJ considered the case *de novo,* reopened the first application, and found that Reynolds was disabled from January 22, 1982 through September 26, 1983. Reynolds did not appeal that decision. The third and present application alleges disability as of December 1, 1983.

**2.** 20 C.F.R. Part 404, Subpart P, Appendix 1 reads in pertinent part:

## II.

### A.

■ Mr. Reynolds argues to this court that the ALJ should have reopened the two prior benefit applications since the ALJ did not "restrict his [evidentiary] inquiry to the period after the prior denial of benefits." It is Mr. Reynolds' contention that "[h]ad the district court reviewed this evidence, it would have been compelled to reverse the secretary's decision." The Secretary argues that Mr. Reynolds is precluded from pursuing this argument on appeal since it was never presented to the district court. We agree. A review of the motions and memoranda submitted to the district court confirms that no contention was made that the ALJ should have reopened the prior applications. Thus, Mr. Reynolds is barred from pursuing this argument on appeal. *Grant v. Burlington Industries,* 832 F.2d 76, 81 (7th Cir.1987); *DeValk Lincoln Mercury, Inc. v. Ford Motor Co.,* 811 F.2d 326, 338 (7th Cir.1987); *Evans v. Fluor Distrib. Cos.,* 799 F.2d 364, 366 (7th Cir.1986); *See also, Williams v. Burlington Northern, Inc.,* 832 F.2d 100, 103 (7th Cir.1987).

■ Even if we were to consider this argument it is still not persuasive. The current (third) application for benefits alleges disability beginning on December 1, 1983. In the second application, the ALJ found Mr. Reynolds to be disabled from January 22, 1982 through September 26, 1983. He also found that Mr. Reynolds was no longer disabled after September 26, 1983. Therefore, because the current application alleges disability beginning not *before* but *after* December 1, 1983, any prior

1.05 *Disorders of the Spine:*

. . . .

C. Other vertebrogenic disorders (e.g., herniated nucleus puplosus, spinal stenosis) with the following persisting for at least 3 months despite prescribed therapy and expected to last 12 months. With *both* 1 *and* 2:

1. Pain, muscle spasm, and significant limitation of motion in the spine; and

2. Appropriate radicular distribution of significant motor loss with muscle weakness and sensory and reflex loss. (Emphasis added.)

determinations are completely irrelevant to the third application (especially since Mr. Reynolds does not claim any overlap back to the September 26, 1983 date). They are completely separate, distinct, and unrelated applications. As an additional matter, we cannot review any decision by the Secretary declining to reopen previous benefit application determinations except for those constitutional in nature. *Califano v. Sanders*, 430 U.S. 99, 107–108, 97 S.Ct. 980, 986, 51 L.Ed.2d 192 (1977); *Early v. Department of Health and Human Services*, 776 F.2d 782, 784 (8th Cir.1985); *Watters v. Harris*, 656 F.2d 234, 239 (7th Cir.1980). Here, the ALJ merely mentioned the prior proceedings—he did not reopen them. He discussed them only to describe the claimant's background and not to review their merits. *See Underwood v. Bowen*, 807 F.2d 141, 143 (8th Cir.1986). This does not constitute a reopening. *Id.* (*Citing Rohrich v. Bowen*, 796 F.2d 1030, 1031 (8th Cir.1986)).

### B.

Mr. Reynolds presents a second argument that the Secretary erred in applying the regulations (20 C.F.R. 404.1502 *et seq.*) to determine that Reynolds had the residual functional capacity (RFC) to perform sedentary work. He also argues that that finding was not supported by substantial evidence since it was contradicted by evidence submitted by Reynolds' physician and a vocational expert. The Secretary, as we would expect, argues that the regulations were applied properly and that the ALJ's finding was not unsupported. We must accept the ALJ's findings if they are supported by substantial evidence but we must not reweigh that evidence. *Bunch v. Heckler*, 778 F.2d 396, 399 (7th Cir.1985). We agree with the Secretary, the ALJ's findings were supported by substantial evidence.

As described earlier, the ALJ found that Mr. Reynolds did suffer from a severe vertebrogenic impairment. However, the ALJ determined that that impairment did not meet or equal the listings set forth in 20 C.F.R. Part 404, Subpart P, Appendix 1.[3] The ALJ also found that Mr. Reynolds retained the RFC to perform sedentary work as set forth in 20 C.F.R. 404.1567(a). Applying the rules[4] set forth in Table 1, Subpart P, Appendix 2, the ALJ then found Mr. Reynolds to be not disabled.

First, it is noted that while he claims the regulations were applied improperly, Mr. Reynolds never developed that theory past a conclusory allegation. Mr. Reynolds' arguments boil down to this: the ALJ could not possibly have found that Mr. Reynolds retained the RFC to perform sedentary work in light of the testimony of his physician and vocational expert. Mr. Reynolds' real dispute is not with the application of the regulations; but rather with the finding that he has the RFC to perform sedentary work.

■ Focusing on the finding that Mr. Reynolds retains the RFC to perform sedentary work, we are unable to say that the Secretary's and the ALJ's decisions are unsupported by the evidence. Magistrate Evans observed that "although we recognize that there is evidence of pain, it is not completely consistent with plaintiff's normal activities." In other words, the evidence submitted by Mr. Reynolds' physician, Dr. Haggerty, conflicted with the evidence of his daily activities. As Judge Easterbrook has stated, "someone had to resolve the conflict, and under the statute that someone is the Secretary's delegate [the ALJ]." *Stephens v. Heckler*, 766 F.2d 284, 287 (7th Cir.1985).

After reviewing Mr. Reynolds' activities and comparing them to his complaints of pain (which the ALJ found to be credible) the ALJ found that Mr. Reynolds was indeed capable of sedentary work—contrary to his personal physician's opinion. This determination is not improper and is supported by substantial evidence. "The patient's regular physician may want to do a favor for a friend and client, and so the treating physician may too quickly find dis-

---

**3.** See footnote 2.

**4.** Rules 201.21 and 201.28.

ability.... The regular physician also may lack an appreciation of how one case compares with other related cases. A consulting physician may bring both impartiality and expertise." *Stephens,* 766 F.2d at 299 (citation omitted). Thus, while the treating physician's opinion is important, it is not the final word on a claimant's disability.

A review of the array of evidence presented to the ALJ shows an opinion by Dr. Obaisi that Mr. Reynolds had pain and that he should change jobs. But Dr. Obaisi did not advise him to quit working completely. Dr. Holden, one of Mr. Reynolds' treating physicians, stated that Mr. Reynolds should not return to heavy labor but that he should consider light work. Dr. Haggerty, also Reynolds' treating physician, stated that Reynolds had no skin sensory loss and only slight muscular loss requiring the occasional use of a cane. These findings show that Reynolds' impairments did not meet or equal the listings in 20 C.F.R. Part 404, Subpart P, Appendix 1.[5] Thus, when considering just the medical evidence most favorable to his case, it is not possible to find that Mr. Reynolds meets any accepted definition of "disabled".

When the additional evidence of his activities is considered it is even more obvious that the decision below (that Reynolds is not disabled but rather that he is capable of performing sedentary work) is supported by substantial evidence. By definition, "[s]edentary work involves lifting no more than 10 pounds at a time and occasionally lifting or carrying articles like docket files, ledgers, and small tools. Although a sedentary job is defined as one which involves sitting, a certain amount of walking and standing is often necessary in carrying out job duties." 20 C.F.R. § 404.1567(a).

In his testimony before the ALJ, Mr. Reynolds stated that he watches 5 to 6 hours of television per day, drives a car 15 to 20 miles per week, helps with household chores (which have on occasion even included cutting his grass with a push lawnmower), participates in a scuba club (which in-

cludes some underwater search and recovery operations), and on the day before his hearing with the ALJ he went on an expedition to pick bittersweet. These activities support the ALJ's conclusion that Mr. Reynolds does indeed have the RFC to perform sedentary work.

As a final matter, Mr. Reynolds argues that the "unrebutted" testimony of a vocational expert, Mr. Bohannon, established "that the claimant was not able to perform any substantially gainful activity and that a sufficient number of sedentary jobs that the claimant could perform would not exist in the national economy." Magistrate Evans found Mr. Bohannon's testimony irrelevant to determining Mr. Reynolds' capacity to perform sedentary work since it discussed jobs beyond Mr. Reynolds' physical capability and also took into consideration the transferability of Mr. Reynolds' skills. However, transferability of skills is not an issue under Rules 201.21 and 201.28. On appeal, the Secretary shoots more holes into Mr. Bohannon's report—the Secretary counters that the report is "unrebutted" because it was submitted at such an advanced stage of the proceedings and that the ALJ was unable to question Mr. Bohannon regarding his conclusion.

A review of Mr. Bohannon's report confirms the Magistrate's conclusion that the report is irrelevant. It plainly considers jobs beyond Mr. Reynolds' capacity. It also relies on the nontransferability of Mr. Reynolds' skills. Rules 201.21 and 201.28 take into account the fact that an applicant's skills are nontransferable. When these rules (which relate to Mr. Reynolds) are applied, a finding of "not disabled" is required.

We must accept the ALJ's findings if they are supported by substantial evidence. 42 U.S.C. § 405(g). *Bunch v. Heckler,* 778 F.2d 396, 399 (7th Cir.1985); *McNeil v. Califano,* 614 F.2d 142, 145 (7th Cir.1980). "Substantial evidence is that which 'a reasonable mind might accept as adequate to support the conclusion.' *Taylor v. Schweiker,* 739 F.2d 1240, 1241 (7th Cir. 1984). 'If the record contains such sup-

---

5. See footnote 2.

port, we must affirm unless there has been an error of law.' *Id.* (citations omitted). A reviewing court must not reweigh the evidence or substitute its judgment for that of the secretary. *McNeil v. Califano*, 614 F.2d 142, 145 (7th Cir.1980)." *Bunch*, 778 F.2d at 399.

Applying these standards, we find that a reasonable mind would indeed accept the evidence presented as adequate to support the Secretary's decision. If the findings are supported by substantial evidence we must affirm absent any error of law. We find no error of law and the district court must be affirmed.

### III.

By failing to present it to the district court, Mr. Reynolds waived his argument that the ALJ should have reopened his two prior benefit applications. In any event, consideration of the prior applications is irrelevant to this case since the time periods involved do not overlap. Mr. Reynolds' argument that the evidence does not support the conclusion that he retains the RFC to perform sedentary work is without merit. Review of the record shows that sufficient evidence was presented to show that Mr. Reynolds may perform sedentary work. The judgment of the district court is

AFFIRMED.